[J-48-2025] [MO: Todd, C.J.]

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 84 MAP 2024 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Superior Court at No. 520 MDA |
| | : | 2022 dated November 28, 2023 |
| v. | : | Affirming the Order of the York |
| | : | County Court of Common Pleas, |
| | : | Criminal Division, at No. CP-67-CR- |
| STUART HARRISON, | : | 0007632-2018 dated November 1, |
| | : | 2021. |
| Appellee | : | |
| | : | SUBMITTED: March 25, 2025 |

**<u>CONCURRING AND DISSENTING OPINION</u>**

**JUSTICE DOUGHERTY**                                    **DECIDED: April 30, 2026**

Because the Superior Court clearly overlooked our jurisprudence establishing the applicable judicial standards for evaluating a Commonwealth motion to *nolle prosequi* ("*nolle pros*") charges,[1] I would reverse its published decision and remand for it to apply our binding precedent in the first instance. The majority instead affirms on an alternate ground. It also resolves, *sua sponte*, an issue not raised by the Commonwealth. Thus, I respectfully dissent in part.

As the majority correctly explains, in *Commonwealth v. Reinhart*, 353 A.2d 848 (Pa. 1976), "we instructed trial courts to examine the reason 'given by the Commonwealth' in support of [a] motion [to *nolle pros*], and then determine if that reason is both 'valid and

---

[1] *See* Pa.R.Crim.P. 585(A) ("Upon motion of the attorney for the Commonwealth, the court may, in open court, order a *nolle prosequi* of one or more charges notwithstanding the objection of any person."); 42 Pa.C.S. §8932 (after the commencement of a criminal matter, a prosecutor "shall not enter a *nolle prosequi* or dispose of the matter . . . without having obtained the approval of the court").

reasonable.'" Majority Opinion at 29, *quoting Reinhart*, 353 A.2d at 853. *Reinhart* articulated "a straightforward standard[.]" *Id*. at 30. Equally straightforward is the appellate standard of review in such cases. In *Commonwealth v. DiPasquale*, 246 A.2d 430 (Pa. 1968), we held a trial court's "grant or refusal of a petition for *nolle pros* . . . lies within the sound discretion of the lower [c]ourt, and its action will not be reversed in the absence of an abuse of discretion." *Id*. at 432 (citation omitted); *see* Majority Opinion at 28 (acknowledging *DiPasquale* "established the standard of appellate review of a trial court's denial" of a motion to *nolle pros* as "whether the trial court abused its discretion").

The panel below failed to heed these principles. First, wrongly believing it needed to "decide what standard" a trial court should apply when evaluating a Commonwealth motion to *nolle pros* charges, the panel determined the "correct standard" is "*de novo* review." *Commonwealth v. Harrison*, 307 A.3d 71, 84 (Pa. Super. 2023); *see id*. ("a *de novo* standard applies to a motion for *nolle prosequi* based on an asserted lack of evidentiary sufficiency"). This holding conflicted with *Reinhart*, which the panel failed to even cite. *See Reinhart*, 353 A.2d at 853 ("Pennsylvania law indicates that there are two factors to be considered when a request for a *nolle prosequi* is made: (1) is the reason given by the Commonwealth for requesting the *nolle prosequi* valid and reasonable, and (2) does the defendant, at the time the *nolle prosequi* is requested, have a valid speedy trial claim?") (footnotes omitted). Second, the panel seemed to suggest its own standard of review on appeal was *de novo*. *See Harrison*, 307 A.3d at 86 (explaining "whether the trial court correctly" evaluated the evidentiary sufficiency of the evidence "presents a pure question or law, and we review it *de novo*"). This conflicted with *DiPasquale*, which the panel did cite in its opinion, albeit for unrelated reasons. *See DiPasquale*, 246 A.2d at 432 (the "refusal of a petition for *nolle pros* . . . will not be reversed in the absence of an abuse of discretion").

The first question we agreed to resolve in this appeal by the Commonwealth is whether the Superior Court — not the trial court — "failed to properly apply and follow the binding legal precedent of this Court by using a *de novo* standard for a Commonwealth's motion for *nolle prosequi* . . . instead of the 'valid and reasonable' standard adopted by this Court[.]" *Commonwealth v. Harrison*, 328 A.3d 466 (Pa. 2024) (*per curiam*). Under *Reinhart*, the clear answer to that question is "yes." In overlooking that binding decision (and *DiPasquale*) and adopting a new *de novo* standard of review for trial and appellate courts alike, the Superior Court plainly erred, as the Commonwealth argues.

The majority nevertheless affirms. It explains its "examination of the record supports the conclusion that **the trial court** properly employed the *Reinhart* standard[,]" and "that the Commonwealth's reasons for seeking *nolle prosequi* were neither valid nor reasonable." Majority Opinion at 33, 35 (emphasis added). In other words, the majority affirms based on its determination the trial court applied the correct standard to the Commonwealth's motion to *nolle pros*, even if the Superior Court didn't. Certainly, there is generally nothing improper about an appellate court affirming on an alternate ground. *See Commonwealth v. Wholaver*, 177 A.3d 136, 145 (Pa. 2018) ("[I]t is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record.") (citation omitted). But since it is obvious the panel below overlooked our precedent imposing the applicable standards of review, consistent with our typical practice, I would simply reverse its published opinion and remand for it to apply the proper standards. *See Commonwealth v. Clay*, 64 A.3d 1049, 1057 (Pa. 2013) ("Where a reviewing court applies the incorrect legal standard, our [C]ourt generally will remand the matter with appropriate directions.") (citation omitted).

More concerning, however, is the majority's rejection of an argument not raised by the Commonwealth. Specifically, the majority holds "the highly deferential standard of

review of a prosecutor's initial decision not to bring criminal charges which we articulated in [*In re Ajaj*, 288 A.3d 94 (Pa. 2023)[2]], does not govern this situation[.]"  Majority Opinion at 31.  Yet, the Commonwealth never makes this argument in its brief to this Court; it argues only that the lower courts erred by adopting "a *de novo* review standard for *nolle prosequi* motions despite the existence of the binding 'valid and reasonable' standard" from *Reinhart*.  Commonwealth's Brief at 28; *see, e.g.*, *id*. at 22 ("the 'valid and reasonable' standard articulated by this Court in *Reinhart* . . . is consistent with the prosecutorial function and the discretion required by prosecutors in deciding whether to withdraw charges"); *id*. at 41 ("the 'valid and reasonable' standard adopted by this Court in *Reinhart* . . . is the necessary judicial check on the prosecutorial discretion concerning whether to discontinue the prosecution of a defendant").  Although it is true the Commonwealth contends *Reinhart*'s "valid and reasonable" standard more closely "**aligns with** [*Ajaj*]'s bad faith, fraud, or unconstitutional standard" than with the *de novo* standard invented by the Superior Court, *id*. at 41 (emphasis added), the Commonwealth does not presently advocate for a change in the law supplanting *Reinhart* with *Ajaj*.  On the contrary, it merely seeks application of the existing *Reinhart* standard.[3]

---

[2] *Ajaj* held a trial court may overturn a prosecutor's decision to disapprove a private criminal complaint only "if the private complainant demonstrates that the disapproval decision amounted to bad faith, occurred due to fraud, or was unconstitutional."  288 A.3d at 109.

[3] I recognize that after we issued our decision in *Ajaj*, the Superior Court directed the parties to address what effect, if any, it had on the present case.  In its supplemental brief, the Commonwealth argued: "Given th[e] similarities between disapproving a private criminal complaint and seeking to *nolle prosequi* a criminal case, it stands to reason to employ the same standard in each circumstance."  Commonwealth's Supplemental Superior Court Brief, 520 MDA 2022, at 13.  Critically, though, the Commonwealth did not press this argument in seeking allowance of appeal, we did not grant review of any such issue, and the Commonwealth has not raised this claim in its brief to this Court.

In my respectful view, this case is not an appropriate vehicle for reconsidering our precedent for several reasons. For one, the "Commonwealth does not presently contend that it was seeking dismissal of the prosecution for any policy-based reasons, and it disclaims any reliance on the 'rehabilitation-related basis' that it proffered in support of" its initial *nolle pros* motion. Majority Opinion at 34 n.18; *accord* Commonwealth's Brief at 25 n.8 (asserting its "valid and reasonable basis" supporting its second motion to *nolle pros* "must be completely independent from" its first). Instead, "the Commonwealth's sole basis supporting its request for *nolle pros*[ ] in this case [i]s its assertion that the totality of the evidence which it could factually, legally, and ethically present at trial — which excluded [an eyewitness's prior] account relayed to the investigating troopers given his subsequent death — [i]s **insufficient as a matter of law** to carry its burden of proof beyond a reasonable doubt that Harrison committed criminal negligence when he shot the victim." Majority Opinion at 34 (emphasis added). Even if *Reinhart*'s "valid and reasonable" standard is appropriate for evaluating pure legal claims like the one before us, the same may not be true when the Commonwealth seeks to *nolle pros* criminal charges for policy-based reasons. *See Wayte v. United States*, 470 U.S. 598, 607 (1985) (noting courts are "particularly ill-suited" to weighing the factors a prosecutor typically considers in bringing, or dropping, a criminal case, including "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan"); *see also Commonwealth v. Mulholland*, 702 A.2d 1027, 1034 (Pa. 1997) ("The public perception of the criminal justice system is one of a broad spectrum of factors a prosecutor may properly consider in the exercise of his discretion, and this has been true from time immemorial.") (citation omitted).

Additionally, because the Commonwealth has not asked us to reconsider the current standard, it does not provide any authority that would support such an endeavor. But there appears to be plenty. Consider, for example, how some federal courts approach dismissal requests under Federal Rule of Criminal Procedure 48. Rule 48(a), the federal counterpart to our Pa.R.Crim.P. 585 and 42 Pa.C.S. §8932, similarly provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." F.R.Crim.P. 48(a). This leave-of-court rule "contemplates public exposure of the reasons for the abandonment of [a prosecution] in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors." *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F.Supp. 483, 486 (S.D.N.Y. 1964); *see In re Richards*, 213 F.3d 773, 788 (3d Cir. 2000) (describing the leave-of-court rule "as a 'sunshine' provision that exposes the reasons for prosecutorial decisions"); *United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984) ("The primary purpose" of the leave-of-court rule "is to prevent harassment of a defendant by a prosecutor's charging, dismissing, and recharging the defendant with a crime. Thus, to honor the purpose of the rule, the trial court at the very least must know the prosecutor's reasons for seeking" dismissal "and the facts underlying the prosecutor's decision.") (internal citations omitted); *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982) ("Although the burden of proof is not on the prosecutor to prove that dismissal is in the public interest, the prosecutor is under an obligation to supply sufficient reasons — reasons that constitute more than a mere conclusory interest.") (internal footnotes, quotation marks, and citation omitted); *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) (the "requirement of judicial leave . . . contemplates exposure of the reasons for dismissal"); *see also* 3B Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure Crim.* §802 (4th ed. June 2024 update) ("Since the court must exercise sound judicial discretion in considering a request

for dismissal, it must have sufficient factual information supporting the recommendation.") (footnotes omitted).

Significantly, many federal courts interpret Rule 48(a) as imposing a standard far more deferential to the prosecution than the "valid and reasonable" standard we adopted in *Reinhart. See, e.g.*, *United States v. Bernard*, 42 F.4th 905, 909 (8th Cir. 2022) ("Courts can exercise their discretion to withhold leave in only the rarest of cases[,]" such as "when there has been prosecutorial harassment" or the prosecutor "had an illegitimate motive rising to the level of bad faith. . . . Anything less is not enough.") (internal quotation marks and citations omitted); *United States v. Romero*, 360 F.3d 1248, 1251 (10th Cir. 2004) (although leave of court is required to dismiss an indictment, a "court is generally required to grant a prosecutor's [ ] motion to dismiss unless dismissal is clearly contrary to manifest public interest") (internal quotation marks and citation omitted); *United States v. Reyes*, 102 F.3d 1361, 1367 (5th Cir. 1996) (request for dismissal improper only if motivated by bad faith, which "is evidenced when the government is motivated by considerations clearly contrary to the public interest") (internal quotation marks and citation omitted); *United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995) ("The disposition of a government's motion to dismiss an indictment should be decided by determining whether the prosecutor acted in good faith at the time he moved for dismissal. A motion that is not motivated by bad faith is not clearly contrary to manifest public interest, and it must be granted."). Some courts in states with comparable leave-of-court rules have held similarly. *See, e.g.*, *State v. McEwan*, 265 N.W. 2d 818, 821 (Minn. 1978) ("Even where the prosecutor must seek leave of court to dismiss charges, the trial court's role is limited to insuring itself that no abuse of discretion has occurred.") (citation omitted).

I do not mean to suggest we must, or even should, adopt any of these alternate, more deferential standards.[4]  But their very existence proves this issue is more nuanced than the majority lets on.  Moreover, the *Reinhart* Court's analysis on this point is seriously lacking.  The single case the Court cited in support of adopting the "valid and reasonable" standard is *Commonwealth v. Leaming*, 275 A.2d 43 (Pa. 1971).  That case, however, concerned a defendant's speedy trial claim, and *Leaming* says nothing of a "valid and reasonable" standard.[5]  Thus, for this reason as well, it may be prudent for this Court in

---

[4] Nor do I intend to cast doubt on the constitutionality of Pa.R.Crim.P. 585 or 42 Pa.C.S. §8932.  As the majority persuasively explains, once the Commonwealth brings "criminal charges and then obtain[s] judicial approval to pursue them[,]" it "implicates the duty of judges to secure the orderly administration of justice by supervising the resulting proceedings, and to protect the accused's rights to a fair trial and due process."  Majority Opinion at 31-32.  In recognition of this judicial involvement, Rule 585 and Section 8932, like their federal counterpart, merely operate as a limited "power to check power."  *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975); *see Commonwealth v. Whitaker*, 359 A.2d 174, 177 (Pa. 1976) ("district attorney's power to decide whether and when to . . . discontinue a case is subjected to the power of the [trial] court to supervise all court proceedings and to protect the accused's right to a fair trial") (citation omitted).  More precisely, they provide a measure of transparency, which in turns promotes public accountability.  *See In re Richards*, 213 F.3d at 789 ("[T]he public has a generalized interest in the processes through which prosecutors make decisions about whom to prosecute that a court can serve by inquiring into the reasons for a requested dismissal.  While this interest cannot rise to the substantive ability to compel a prosecution to proceed, it does argue in favor of allowing a court to force prosecutors to publicly reveal their reasons for not proceeding before granting a requested dismissal.  Bringing these decisions into the open may, in turn, lead to attempts by the public to influence these decisions through democratic channels.") (internal citation omitted).  They also ensure a court discharges its duties properly, for "[i]f the record contains no reasons or facts explaining the trial court's decision, the trial court's decision is effectively unreviewable." *Derr*, 726 F.2d at 619; *see Harrison*, 307 A.3d at 87 (McCaffery, J., concurring) ("It is only after a full inquiry is completed that a trial court can fulfill its responsibility of ensuring the prosecution's decision is proper.").  As such, these authorities contemplate a division of labor **consistent with** the constitutional design, which "enjoins upon its branches separateness but interdependence, autonomy but reciprocity."  *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 635 (1952) (Jackson, J., concurring).

[5] The majority tries to bolster *Reinhart*'s threadbare analysis by declaring the "question of whether a trial court abused its discretion in refusing the Commonwealth's request for the entry of a *nolle prosse*, is a mixed question of law and fact."  Majority Opinion at 28-29. (continued…)

an appropriate case to reconsider whether the *Reinhart* standard is proper.[6]  But this is not that case because the Commonwealth seeks only an application of existing law, not an expansion or alteration of it.  Respectfully, the complex question of whether to reaffirm *Reinhart* should not be resolved *sua sponte*.[7]

Finally, I am especially hesitant to decide more than is necessary in this appeal given the separation of powers concerns lurking just beneath the surface.  *See* Majority Opinion at 16 (noting the Commonwealth raised a separation of powers claim before the Superior Court that was not independently addressed by the panel).  Like the panel below, the majority does not confront the "unaddressed ramifications" that inevitably will follow from its decision.  Commonwealth's Brief at 43 n.13.  Most notably, what happens next?  Given its position the evidence is insufficient to support a conviction, is the York County

---

In addition, the majority notes a "trial court should apply a preponderance of the evidence standard in making its determination as to whether the stated factual reasons are valid and reasonable."  *Id*. at 31.  Notably, however, like the *Reinhart* Court, the majority provides no authority for adopting these propositions of law in this context.  Also, in line with the Superior Court's misstep below, the majority injects a *de novo* standard into the equation.  *See id*. at 29 ("To the extent that a legal question is at issue, a determination by the trial court will . . . be reviewed *de novo*."), *quoting Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 106 A.3d 1, 13 (Pa. 2014) (additional citation omitted).

[6] Although I do not prejudge the matter, the effectively nonexistent reasoning in *Reinhart* would seem to militate against affording it *stare decisis* effect.  *See Commonwealth v. Alexander*, 243 A.3d 177, 196 (Pa. 2020) (noting quality of reasoning is pertinent factor in deciding whether to overrule past decision).

[7] The majority claims to "express no opinion on whether [the *Reinhart*] standard should be reconsidered, as that issue is not before us."  Majority Opinion at 32 n.17.  Yet the majority then immediately goes on to hold "the far more deferential standard of review *Ajaj* provided . . . is not applicable in this situation[.]"  *Id*. at 32-33.  Although I fully agree *Ajaj* is distinguishable and did not overrule the *Reinhart* standard for evaluating motions to *nolle pros* charges, by going further and *sua sponte* declining to adopt *Ajaj*'s bad faith, fraud, or unconstitutional standard in this context, the majority necessarily reconsiders and endorses *Reinhart*'s standard.  I would not preemptively foreclose the possibility that a bad faith standard like the one *Ajaj* announced may be constitutionally required in this scenario, as many other courts have held, as discussed above.  Resolution of that issue, however, should await a case with more pointed advocacy.

District Attorney's Office (YCDAO) conflicted out of prosecuting Harrison such that it must request supersession, *see* 71 P.S. §732-205(a)(3), a procedure complicated by the fact that the present Attorney General, who would typically take over the case in the normal course, was formerly the District Attorney of the YCDAO who "decided to seek *nolle prosequi* of the case[?]" Majority Opinion at 10. Alternatively, if the YCDAO remains in the case, what are its options in resolving the matter? Is it permitted to file a new motion to *nolle pros* based on other grounds? Can it just sit on its hands and let the speedy trial clock run, as we suggested in *Leaming*? *See* 275 A.2d at 46 (vacating *nolle pros* and remanding "for a prompt trial or, failing that, for final dismissal of the charges"); *see also* 3B Wright & Miller, *Federal Practice & Procedure Crim.* §802 n.5 ("If a Rule 48(a) motion is denied, the government can refuse to bring the case to trial within the time limits of the Speedy Trial Act, in which case the court has no choice except to dismiss.") (citation omitted). Can it pursue a plea agreement? If the prosecution must proceed to trial, how should the YCDAO comport itself given that "it believes the now-existing evidence does not support conviction[?] Is [it] to inform the jury that it would not convict [Harrison] of the crime charged based upon the evidence?[8] Is [it] ethically allowed to question witnesses and make argument at all?" Commonwealth's Brief at 42-43 n.13. The majority's decision raises far more questions than it answers.

As I have previously observed, "there is a colorable argument that when a court forces a district attorney to commence a prosecution he opposes — whether for legal or policy reasons — it inevitably interferes with the prosecutor's discretionary functions and thereby violates the constitutional principle of separation of powers." *In re Ajaj*, 288 A.3d

---

[8] *See* 3B Wright & Miller, *Federal Practice & Procedure Crim.* §802 ("In a trial case, if the court refuses to consent to dismiss, the prosecutor in the opening statement to the jury and in the presentation of evidence can indicate the considerations that should work an acquittal.").

94, 112-113 (Pa. 2023) (Dougherty, J., concurring) (internal quotation marks, brackets, and citation omitted); *see also id*. at 126 n.61 (Wecht, J., concurring and dissenting) (acknowledging "some remedies[,]" such as "a court's order commanding a prosecutor to act[,]" "might offend the separation of powers"). The same could be said when a court prevents a prosecutor from discontinuing a case (at least prior to adjudication[9]). *See DiPasquale*, 246 A.2d at 432 ("A District Attorney has a [g]eneral and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide . . . whether and when to continue or discontinue a case."); *see also Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967) (Burger, J.) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding . . . whether to dismiss a proceeding once brought."). After all, a court generally is not situated — either in terms of institutional competence, or as a matter of its proper role in our constitutional system — to make an assessment as to whether a prosecution "should" continue.

In sum, I agree with the majority's *sub silentio* holding that the Superior Court erred when it adopted a *de novo* standard for reviewing a Commonwealth motion to *nolle pros* charges. I respectfully dissent, however, from the majority's apparent application of the right-for-any-reason doctrine, and from its resolution of issues not actually raised by the Commonwealth. Instead, I would reverse this matter and remand to the Superior Court with instructions for that court to apply our binding precedent and resolve any outstanding, preserved constitutional issues in the first instance.

Justice Mundy joins this concurring and dissenting opinion.

---

[9] *See Commonwealth v. Brown*, 196 A.3d 130, 145 (Pa. 2018) (explaining "the scope of prosecutorial discretion changes as a criminal case proceeds, narrowing as the case nears completion").